IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE WELFARE OF: | ) | No. 30039-1-III |
| | ) | (Consolidated with |
| J.B., S.S., and J.S. | ) | Nos. 30040-4-III, 30041-2-III) |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| J.S., | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C. J. — The trial court entered a finding in this parental termination action that necessary psychological services were not offered, but excused the failure due to futility. We affirm the trial court, but in light of subsequent developments, we remand this matter for any further proceedings the trial court deems necessary.

FACTS

Ms. J.S.[1] (Ms. S), the appellant, is the mother of three children: daughter J.S. (born 2005); son S.S. (born 2007); and son J.B. (born 2009). Her late husband is the father of J.S. and S.S., while J.B. is the son of A.B., a man Ms. S started dating in early 2009. Shortly after J.B. was born, A.B. took a job in Spokane and decided to live with Ms. S and her children. The group moved to Spokane from Idaho. Two weeks later Spokane police twice responded to reports of domestic disputes between Ms. S and A.B. Both adults were reported to be under the influence of intoxicants.

The children were removed from the home due to extreme chaos and placed in shelter care; Ms. S and A.B. separated and she returned to Idaho. A dependency petition was filed November 19, 2009, and an order of dependency entered February 24, 2010. The children eventually were placed with Ms. S's mother in Idaho.

Periodic reviews throughout the 2010 calendar year showed that Ms. S had not been compliant with ordered treatment. A hearing order from January 12, 2011, showed that Ms. S needed to: (1) undergo a 26-week anger management treatment; (2) comply with recommendations from a psychological evaluation; (3) undergo random drug testing; (4) engage in individual counseling; (5) engage in intensive out-patient chemical dependency treatment; and (6) comply with parenting assessment recommendations.

---

[1] We will use appellant's initials in order to protect the privacy of her children.

After a lifetime of trauma, Ms. S was found by her evaluator to have major depressive disorder, post traumatic stress disorder, marijuana and alcohol abuse in early full remission, possible opiate abuse, a not otherwise specified personality disorder, and mental strain resulting from numerous pressure sources. A parenting assessment found Ms. S had parenting skills, but was unable to consistently utilize them due to her own problems.

An evaluation calling for in-patient chemical dependency treatment was made known to Washington's Department of Social and Health Services (DSHS) in April 2010. Ms. S was on probation in Idaho due to 2008 controlled substances (marijuana) and driving while under the influence (DUI) convictions. She was jailed in Idaho for most of May 2010 due to a positive drug test for methadone use. Late in 2010 she was arrested in Idaho for another DUI, which constituted a violation of the terms of her probation. She was jailed from October 2, 2010, through February 18, 2011, when the Idaho court transferred her to an in-patient dependency treatment facility. She remained in that facility until June 2011.

Meanwhile, DSHS filed a petition to terminate her parental rights in early November 2010.[2] About a week before the termination trial, counsel for Ms. S moved

---

[2] DSHS also moved to terminate A.B.'s parental rights. After trial resulted in a termination ruling, the trial court later reversed itself and granted a new trial due to an invalid waiver of counsel. The results of the new trial are not revealed in this record, but

3

for a continuance of the trial due to Ms. S's progress in treatment. Counsel sought a continuance until June when her program would be completed. The trial court denied the continuance request.

At the conclusion of a four-day trial, the trial judge made extensive oral findings that later were reduced to writing. The court found that DSHS had not provided mental health services. Nonetheless, the court concluded that all of the statutory factors had been satisfied and that termination was in the best interests of the children. Upon entry of the written ruling, both parents appealed to this court.[3]

While the appeals were pending, our commissioner granted Ms. S's motion to supplement the record and permitted DSHS to respond with additional evidence of its own concerning the children's current status. Ms. S presented evidence that she successfully completed treatment, was discharged from her probation, and was working as a manager at a Subway restaurant in Idaho. DSHS presented evidence that the children had been adopted by their grandmother, had bonded with her, and were performing at appropriate grade level in school.

---

in light of a subsequent adoption, A.B.'s parental rights likely were terminated. His case is not before this court.

[3] The father's appeal was dismissed as moot when the trial court granted him a new trial. *See* footnote 2. The children's grandmother (now adoptive mother) also moved to intervene in the appeal. We conclude that she has not shown that her interests

ANALYSIS

Ms. S challenges the trial court's determination that the State met its burden of proof on three of the statutory factors, the determination that termination was in the best interests of the children, and the court's refusal to grant a continuance to learn the results of the dependency treatment program. DSHS challenges the court's finding that it did not provide all necessary services.

The termination of parental rights statute provides a two-step process: the first step focuses on the adequacy of the parents, which must be proven by clear, cogent, and convincing evidence, and the second step focuses on the child's best interests, which need only be proven by a preponderance of the evidence; only if the first step is satisfied may the court reach the second. *In re Welfare of A.B.*, 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). When assessing the adequacy of the parents, RCW 13.34.180(1) lists six elements that the State must prove. Of those elements, three are contested by Ms. S: that the State provided all necessary services, that there is little likelihood that conditions will be remedied in the near future, and that continuation of the parent and child relationship

---

were disparate enough from those of DSHS to justify intervention in this court, although she is free to renew her request with the trial court upon remand.

clearly diminishes the child's prospects for early integration into a stable and permanent home. RCW 13.34.180(1)(d), (e), and (f).[4]

This court reviews factual findings for substantial evidence. *In re Dependency of A.V.D.*, 62 Wn. App. 562, 568, 815 P.2d 277 (1991). The findings required by RCW 13.34.180(1) to terminate a parent-child relationship must be established by "clear, cogent, and convincing evidence." RCW 13.34.190(1)(a)(i). Where a party is required to establish its case by "clear, cogent, and convincing evidence," this court incorporates that standard of proof into its review. *In re Trust & Estate of Melter*, 167 Wn. App. 285, 301, 273 P.3d 991 (2012). Thus:

> When such a finding is appealed, the question to be resolved is not merely whether there is substantial evidence to support it but whether there is substantial evidence in light of the "highly probable" test. *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973); [*In re Reilly's Estate*], 78 Wn.2d [623,] 640[, 479 P.2d 1 (1970)] (recognizing that "[e]vidence which is 'substantial' to support a preponderance may not be sufficient to support the clear, cogent, and convincing" standard). We still view the evidence and all reasonable inferences in the light most favorable to the prevailing party, *Woody v. Stapp*, 146 Wn. App. 16, 22, 189 P.3d 807 (2008) and, as in all matters, defer to the trier of fact on issues of credibility. *In re Welfare of L.N.B.-L.*, 157 Wn. App. 215, 243, 237 P.3d 944 (2010).

*Id.*

With these basic principles in mind, we turn to the challenges raised by Ms. S.

---

[4] The uncontested elements are (1) the children have been found "dependent"; (2) a dispositional order was entered under RCW 13.34.130; and (3) the children have been removed from the home for at least six months. RCW 13.34.180(1)(a), (b), and (c).

*Provision of Services*

RCW 13.34.180(1)(d) requires that the State prove that "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." Ms. S strenuously challenges the trial court's determination that this factor was satisfied, particularly in light of the court's finding that some required services were not offered. DSHS argues that the record supports the court's determination despite the finding that the department failed to "provide a mental health referral, or psychiatric treatment and medication management to the mother."[5]

Ms. S expressly assigns error to finding V to the extent it determines that DSHS had offered all necessary services, pointing to the internal inconsistency with the first sentence (partially quoted above) of finding V.11. We agree that the record supports the trial court's finding that DSHS did not provide a mental health referral or treatment, nor did it arrange for medication management. The parties agree that Dr. Scott Mabee recommended that Ms. S see a psychiatrist to determine what medications she needed. This was never done; a DSHS social worker testified that she did not believe it was necessary in light of the fact that a medical doctor was treating Ms. S with Cymbalta. Dr. Mabee testified that Cymbalta was ineffective in view of Ms. S's other problems. This

---

[5] Finding V.11(first sentence); Clerk's Papers (CP) at 130.

evidence was critical because Ms. S was required by the terms of the dependency order to comply with the recommendations of her psychological evaluation, a ruling that therefore required DSHS to offer or provide that service. Based on this evidence, the trial court's finding that DSHS did not provide for medication management is supported by the record.

Ms. S also argues that DSHS was required to offer in-patient dependency treatment because her out-patient treatment program recommended it. However, the court's dependency orders only required that Ms. S attend intensive out-patient drug treatment, which she did until her funding ran out. Soon thereafter she was jailed when urinalysis testing showed that she had used methadone. After she was released from custody for that violation, there was a four-month period before she was jailed for her second DUI. During this time DSHS arguably could have done more to offer additional dependency treatment services; the only efforts made were an attempt to qualify Ms. S's Idaho treatment provider as an approved facility for reimbursement by Washington. The trial court ultimately concluded that Ms. S's continued substance abuse during her treatment rendered additional efforts on her behalf futile. Based on this record, we cannot disagree.

The remaining question is whether the court's determination that all necessary services were provided is supported by clear, cogent, and convincing evidence,

8

particularly in light of the ruling that necessary mental health resources were not provided. Finding of fact V.11 reads in its entirety:

> The Department did not, however, provide a mental health referral, or psychiatric treatment and medication management to the mother, which was a clear recommendation from her psychological evaluation. These services were available at certain periods of time through the Idaho system, but the Court must find that that mental health treatment component was not offered by [Department of Child and Family Services]. Nevertheless, throughout the dependency the mother's continued chemical use and abuse and involvement with the criminal justice system prevented any responsible follow-through, with or without mental health medication management. While the recommendation for medication management was not recognized and offered by the department, the absence of that service did not materially alter the results in this case. During periods of availability of Idaho mental health services, the mother's abuse remained unabated.

CP at 130.

The failure to offer necessary services is excusable if the effort would be futile. *In re Welfare of M.R.H.*, 145 Wn. App. 10, 25, 188 P.3d 510 (2008). Without using that particular word, the trial court essentially used that philosophy. Although DSHS erred, the error was "harmless" under these facts.[6]

The mental health problems afflicting Ms. S had been long standing, having roots in her youth. Treatment had been attempted before the dependency action, including involuntary commitment after her husband's death by apparent suicide. Despite the

---

[6] While we analogize to "harmless error," we do not use that phrase in its technical meaning.

current on-going out-patient drug treatment, Ms. S was continuing to abuse substances and going to jail for doing so. In view of all of these circumstances, the trial court correctly concluded that the failure to timely offer psychological services did not ultimately change the situation. While psychological treatment was necessary, it was not a magic bullet that was going to immediately cure Ms. S in the midst of her substance abuse, nor was it going to keep her out of jail. Her longstanding problems were not going to go away immediately, and the department's failure to act more aggressively during the brief window it had during 2010 did not change that fact.

Although the department did not do all that it could have done to offer psychological treatment, the trial court still found that DSHS had met its burden of proving that it offered all necessary services. This is a close call, but we do not believe that the trial court erred in concluding that the failure to act more aggressively during the four-month window when Ms. S was not in jail did not affect the outcome. She was given the necessary service of drug dependency treatment and it was not taking. She was jailed for more drug use and eventually incarcerated for a much lengthier term due to continued alcohol abuse. Whether or not she was receiving treatment for her mental health issues, she would still have been jailed for the drug dependency failings and, thus, remained unable to parent her children.

We uphold the trial judge's determination that this factor was proved.

10

*Problems Remediable in the Near Future*

RCW 13.34.180(1)(e) requires proof that the parent's problems cannot be remedied sufficiently to allow the child to return to the parent in the near future. Ms. S argues that because of the failure to provide mental health services, DSHS cannot establish this factor. In turn, respondent argues that the record supports the trial court's determination. While this factor, too, is impacted by the failure to provide mental health services, we believe the evidence supports the trial court's ruling.

What constitutes "the near future" depends upon the child's age and placement circumstances. *In re Welfare of C.B.*, 134 Wn. App. 942, 954, 143 P.3d 846 (2006). The "near future" is a short period of time for a child in foster care in need of a permanent placement. *Id.* For a younger child, a shorter period constitutes the "near future" than it does for an older child. *Id.*; *In re Dependency of P.D.*, 58 Wn. App. 18, 27, 792 P.2d 159 (1990) (six months not near future for 15-month-old).

At the time of trial, J.S. was nearly 6, S.S. was just over 3 ½ years old, and J.B. was nearly 18 months. For the last 16 months, the two older children had been in the care of their grandmother, and the younger child had been in her care for only a slightly shorter period. Their ages all put this matter on the shorter end of the "near future" spectrum. However, all had been together in their grandmother's care for an extended

time rather than in foster care or other short-term care. This fact suggests that the "near future" was somewhat less of an immediate concern.

When assessing this factor at trial, the trial court placed great emphasis on the uncertain future Ms. S faced.[7] By the time of trial, she had been in custody and then at in-patient drug rehabilitation for nearly seven months. Her Idaho probation officer testified that she had two months remaining in her in-patient treatment, and then she would face an Idaho judge. The probation officer was recommending that her probation be revoked and that she serve two years in custody.

The court also focused on the fact that Ms. S had long-term mental health and drug dependency issues that would not be cured in the short term. The court noted that it was taking all of her energies to address those issues, so Ms. S simply could not "provide a stable, reliable, healthy environment for her children while she is battling her mental health and chemical dependency challenges." Finding VI.3; CP at 133.

Given the very real possibility that Ms. S would be incarcerated for another two years, along with the ongoing dependency and mental health problems, the evidence supported the court's determination that this factor was satisfied. There was "little likelihood" that conditions would change to the point where the children could be

---

[7] The trial court did not rely upon Ms. S's mental health problems because of the failure to refer her to treatment for those problems.

returned to Ms. S "in the near future." RCW 13.34.180(1)(e). The trial court's determination was supported by clear, cogent, and convincing evidence.

*Integration into a Stable Home*

The final challenged statutory factor is RCW 13.34.180(1)(f), which requires the State to prove that the "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." This factor was the focus of a recent Washington Supreme Court decision, *In re Dependency of K.D.S.*, No. 86124-2 (Wash. filed Feb. 14, 2013).

There the court rejected the argument that when the State proves factor (1)(e), that there is little likelihood the parent's conditions would change in the "near future," it also automatically proves factor (1)(f). *Dependency of K.D.S.*, slip op. at 13. The court noted that the evidence necessary to prove the two factors would often overlap, so that evidence which established one factor could also establish the other factor. *Id.* at 13-14. However, evidence establishing one factor does not necessarily prove the other. *Id.* at 14.

In its analysis of this factor, the trial court focused on the fact that the children had not been in Ms. S's care since November 2009, and that the impermanence of their situation prevented the stability the children needed. Finding VIII; CP at 133. Given the passage of 16 months since Ms. S had lived with them, the evidence sufficiently supported the trial court's determination. The children had been living with their

13

grandmother nearly the entire period since they had been taken from Ms. S. Their chance to find a permanent home depended upon timely resolution of her parental status.

We conclude that the evidence supported the determination that this factor had been satisfied.

*Fitness to Parent*

The trial court also determined that the State had established a non-statutory element—the parent's current unfitness to parent the children. This finding is required by constitutional due process concerns. *Welfare of A.B.*, 168 Wn.2d at 920. However, the finding can be implicit rather than explicit. *Id.* at 921; *In re Dependency of K.R.*, 128 Wn.2d 129, 141-42, 904 P.2d 1132 (1995).

The trial court made an explicit finding that Ms. S was not currently fit to parent her children. Finding VII; CP at 133. The court expressly noted that she had not made sufficient progress in addressing her mental health and drug dependency problems, and also was in custody in Idaho with an uncertain release date. *Id.* Again, the record supports these determinations. Although DSHS was complicit in Ms. S's failure to address her mental health needs, that fact does not detract from the overall finding that there had been little progress to date. Ms. S continued to suffer from drug dependency and was in custody as a result. She was not currently ready to resume parenting her children.

14

The record supports the trial court's express finding that Ms. S was not currently a fit parent.

*Best Interests of the Children*

Having found that the State had established the six elements relating to Ms. S's fitness as a parent, the trial court then found that it was in the best interests of the children to terminate their relationship with Ms. S. RCW 13.34.190(1)(b). This court reviews whether the determination is supported by a preponderance of the evidence. *Welfare of A.B.*, 168 Wn.2d at 911. Ms. S contests this determination, but we again believe that the evidence supports the court's ruling.

The trial court found that the children needed parents who were "fully engaged and attuned to their needs and they needed them yesterday." Finding IX; CP at 134. Unless they had "firm structure and stability," the children were "at risk of developing long term emotional and physical inadequacies." *Id.*

No explicit factors guide a trial court's determination in this area as each case is different. However, earlier decisions do inform our review. It is proper to consider the bonds and attachments that the children had formed with their caregivers and the potential for significant instability that would result after several years without custody. *Dependency of A.V.D.*, 62 Wn. App. at 572. Furthermore, Ms. S's being in the custody of the State of Idaho at the time of trial was also a permissible factor, just as long as it

15

was not the sole factor. *In re Dependency of J.W.*, 90 Wn. App. 417, 432, 953 P.2d 104 (1998).

In *A.V.D.*, the trial court found that it was in the child's best interests to maintain contact with her father because the two had a good bond, but that it was also in the child's best interests to terminate the parenting relationship so that the child could be adopted into the stability of a permanent home provided by her grandparents. 62 Wn. App. at 571-72. This court affirmed that decision because in spite of the positive parental relationship, it was not in the child's best interests to have to wait in limbo for her father to finish becoming fit. *Id.*

That is essentially the same issue here. Ms. S could be a good parent. However, she was not fit to be a parent at the time of trial and had some ways to go to rectify the situation, if she ever could. Her future also was uncertain. The children had already established a strong bond with their grandmother throughout the dependency, and the older children had even started on that bond for a few months in early 2008 while Ms. S was receiving involuntary treatment following her husband's death. J.B. had never known his mother and the older children had been out of her care for 16 months. Although it may or may not be in the children's best interests to still have some contact with Ms. S, it is more in their best interest to have permanency in the home of their adoptive parent/grandmother.

16

The trial court did not err in concluding that the best interests of the children required termination of Ms. S's parental relationship. They needed stability rather than uncertainty about the future.

*Continuance Request*

Ms. S also argues that the trial court violated her due process rights in denying her continuance request. The essence of her claim is that if the trial court had waited two more months, she would have shown completion of her in-patient treatment and the subsequent successful conclusion of her Idaho criminal case. While we are skeptical that this argument presents a true due process claim, we do not further address it in light of our decision to remand the matter to the trial court.

RAP 12.2 provides in part that in deciding a case, this court may "take any other action as the merits of the case and the interest of justice may require." This court, after the briefing in this case, accepted new evidence from both sides. The mother presented evidence that she had completed drug treatment, was released from custody, and had found stable employment. The children, meanwhile, had bonded with their grandmother and been adopted by her.

This evidence has never been provided to the trial court. The mother's information arguably could have been presented in either a timely motion for reconsideration or as the basis for seeking to set aside the judgment. CR 59; CR 60. In

17

the interest of justice, we think it should have been presented to the trial court and take this opportunity to do so now.

Events occurring after trial could have an impact in many cases, but our interest in finality of judgments and the prevention of on-going and open-ended trials means that only in limited circumstances should trial courts consider posttrial developments in setting aside a final judgment. *See* CR 60. Because of the trial court's finding that DSHS did not provide adequate psychological services and the uncertainty facing Ms. S due to the pending probation revocation, we think this might be one of those rare circumstances. The failure to provide psychological services may have been less of a "harmless error" in light of Ms. S's apparent success in addressing her dependency issues than the trial court originally thought. Or it may not. Similarly, the abrupt end to Ms. S's Idaho criminal conviction difficulties might have been significant evidence in the trial judge's consideration of her current fitness to be a parent and whether there was a likelihood she might be able to parent them in the near future. Or not.

Appellate courts do not find facts. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). We similarly do not substitute our judgment for that of the trier of fact. *Id.* Whether the facts are as the parties allege is for the trial judge to determine, not this court. *Id.* Whether those facts are still the same as when they were brought to our attention a year ago is still another matter. Thus, because those alleged

18

facts could have impacted the outcome of the trial here, we remand for the trial court to consider them.

Our remand should not suggest any particular result. The trial judge has complete discretion, as in a reconsideration motion, on the proceedings to follow. It can accept written or testimonial evidence, or none at all. It can hold a hearing or decline to do so. It decides whether to give any weight to any evidence it considers. Even if it takes evidence and enters findings of fact favorable to Ms. S, it might still decline to set aside its judgment. A significant period of time has passed since the trial of this case and it may simply be too late to modify the decision without doing significant damage to the children. That calculation is left to the considered discretion of the trial judge who hears this reconsideration argument. Or it may be that Ms. S no longer desires to pursue this matter in the best interests of her children. These are all matters left to the considered discretion of the trial judge. She has an opportunity to reconsider this case, but has no obligation to do anything other than to advise the parties of what action is being taken.

## CONCLUSION

The trial court made very thorough and thoughtful findings of fact in both oral and written form. We uphold those findings in this appeal. We affirm the court's judgment that the State had proved all of the factors set forth in RCW 13.34.180(1) by clear, cogent, and convincing evidence. We likewise affirm the determinations that Ms. S was

19

not then fit to parent and that the termination of the parent-child relationship was in the best interests of the children.

The judgment is affirmed. The case is remanded for any further proceedings the trial court believes are proper in accordance with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Kulik, J.

_____
Siddoway, J.

20