IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Adoption of FLL, a child. | ) ) ) | No. 77391-7-I |
| LB and JB, | ) ) | ORDER GRANTING MOTION FOR RECONSIDERATION, |
| Respondents, | ) ) | WITHDRAWING OPINION, AND SUBSTITUTING OPINION |
| v. | ) ) | |
| FL, | ) ) | |
| Appellant. | ) ) ) | |

Appellant FL has filed a motion for reconsideration of the opinion filed in the above matter on April 16, 2018. Respondents LB and JB have filed a response in which they neither endorse nor object to appellant's motion. The court has determined that appellant's motion for reconsideration should be granted, the opinion should be withdrawn and a substitute opinion be filed. Now, therefore, it is hereby

ORDERED that appellant's motion for reconsideration is granted. It is further

ORDERED that the opinion filed on April 16, 2018, is withdrawn and a substitute opinion be filed.

Becker, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Adoption of FLL, a child. | ) ) ) | No. 77391-7-I |
| LB and JB, | ) ) | DIVISION ONE |
| Respondents, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| FL, | ) ) | FILED: June 11, 2018 |
| Appellant. | ) ) ) | |

BECKER, J. — Shortly after receiving a life sentence for murdering the mother of one of his sons, appellant FL stopped communicating with FLL, his son by a different mother. FLL's mother and stepfather, JB and LB, petitioned the court to terminate FL's parental rights and to adopt FLL. The superior court granted the petition, finding in part that appellant "has failed to, and is permanently unable to, perform parental duties." He argues on appeal that the court relied on inadmissible hearsay and, alternatively, that he received ineffective assistance of counsel. We affirm.

FL and JB married in 2005. They are the biological parents of a boy, FLL, born in 2005. FL has another son born a year earlier to a different mother.

In 2008, a Mississippi jury convicted appellant of murdering the mother of the child's half-brother. The jury also convicted him of the kidnapping and felony child abuse of the child's half-brother. The court sentenced appellant to life in prison without parole.

In 2012, the child's mother, JB, divorced appellant and married LB. Four years later, LB petitioned to adopt FLL and to terminate appellant's parental rights. Following a two-day trial, the superior court granted the petition and entered the following oral ruling:

> Based on all of the evidence in this case, the Court will grant the Petitioners' request to terminate the parental rights of [FL], and to permit the child to be adopted by [LB] pursuant to RCW 26.33.120. In doing so, the Court makes an express finding . . . that there is clear, cogent, and convincing evidence that [FL] is an unfit parent based on . . . the parent's failure to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations.
>
> This is the threshold issue that the Court must resolve before looking to the child's best interest. Under statutory interpretation and also case law, there are five different requirements which define parental duties: expressions of love and affection, expressions of personal concern for the health, education, and wellbeing; and supplying necessary food, clothing, and medical care; providing adequate domicile; and furnishing social and . . . religious guidance to the child. The last three [FL] simply is not capable of doing given his incarceration in Mississippi . . . for a life sentence. So, those three prongs, food, clothing, medical care, housing, and social and religious guidance, are not capable of being provided. Suppose social guidance could be done through letters, but more importantly, the expressions of love and affection and expression of personal concern for the health, education, and wellbeing, simply there is just no evidence of that in this case.
>
> There was contradictory testimony about when [FL]'s contact dropped off, *but by his own testimony he testified that since 2012 he has had no phone calls and no letters to the child.* . . .The testimony that the mother and [LB] have, you know, rebuffed all attempts is simply not credible to this Court. This Court finds that if

2

there had been efforts to contact the child, either through family members of [FL] or—by proxy, or by [FL] himself, that that would've been allowed. So, the Court finds that [FL] is unfit . . . based on all of the above.

The Court does want to acknowledge the law in this area, that parental misconduct does not necessarily—or automatically result in termination of parental rights. There is plenty of case law to that effect. But the Court can make a fact-specific determination whether the misconduct is demonstrative of parental unfitness, and in this case *the Court does find by clear, cogent, and convincing evidence in the form of a criminal conviction which has been upheld on appeal that [FL] is unfit to parent the child*. Without going into great detail, because it's simply not necessary, but the conviction of [FL] with regard to his actions of a terrible neglect of his young son [FLL's half-brother], born the same year . . . as [FLL] . . ., that compels this Court to also find that under that conviction, the facts of it, that he is an unfit parent.

The—there has been no testimony in this case that [FL] has in any way rehabilitated himself during incarceration. His testimony that he would be writing but that he doesn't have sufficient resources to pay for postage, simply not credible. It's not credible that his family wouldn't assist him in this regard.

With regard to the next area that the Court needs to focus on, the Court specifically finds that it is in the best interest of this child to terminate the parental rights of [FL], because he has no relationship with his birth father, and will not have the opportunity to have one, and perhaps most importantly, the testimony of [LB] himself was very compelling in his desire and ability to continue parenting [FLL] in the way that he has been. He acts as a father emotionally, physically, and gives him the support, attention, and devotion that this child needs and, frankly, is thriving under.

. . . .

That said, this Court finds clear, cogent, and convincing evidence, *also contained in Ms. Kennelly's report and the testimony that came forth in this case*, that it is clearly in . . . [FLL]'s best interests that this adoption go through, and the Court is willing to sign any orders to that effect that you have.

(Emphasis added.)

The court subsequently entered the following written findings and conclusions which incorporated, but partially amended, its oral ruling:

3

2. There is clear, cogent and convincing evidence that it is in the child's best interests to terminate the relationship. Biological father has failed to, and is permanently unable to, perform parental duties. The Court specifically finds that the respondent father is unfit based on his failure to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations.
3. Respondent father is serving a life sentence without possibility of parole for first-degree murder and felony child abuse of the subject child's half-brother. The circumstances blocking respondent father's performance of his parental obligations demonstrate a substantial lack of regard for his parental duties.
4. The Respondent father's withholding of consent to the proposed adoption is contrary to the best interests of the child.
5. Adoption of [FLL] by his step-father, [LB] is in the child's best interests.
6. The court has considered the supporting documents, testimony and argument from parties *but did not consider the report of Kathleen Kennelly,* . . .

. . . .

. . . The Court further incorporates its oral rulings made on this day *with the express exception of any references made to the Kennelly report and recommendation.*

(Emphasis added.) FL appeals.

Standard of Review

Parental rights are a fundamental liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). To terminate parental rights, the State must satisfy a two-step test. First, it must prove the following statutory elements by clear, cogent, and convincing evidence:

(a) That the child has been found to be a dependent child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

4

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . . [and]

. . . .

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1). If the State satisfies these criteria, the court may terminate parental rights only if the State also demonstrates by a preponderance of the evidence that termination is in the "best interests" of the child. RCW 13.34.190(2).

In addition to the statutory requirements for termination, due process protections require a court to find current parental unfitness before parental rights can be terminated. In re Parental Rights to K.M.M., 186 Wn.2d 466, 479, 379 P.3d 75 (2016). While "'[i]mprisonment alone does not necessarily justify the termination of parental rights,'" an incarcerated parent's "inability to perform his or her parental obligations is certainly relevant to the child's welfare.'" In re Welfare of E.D., 195 Wn. App. 673, 690, 381 P.3d 1230 (2016) (quoting In re Dependency of J.W., 90 Wn. App. 417, 426, 953 P.2d 104 (1998)), review denied, 187 Wn.2d 1018 (2017). The court need not "disregard the negative effects that incarceration may have on a delicate parent-child relationship . . . [or]

ignore the child's need for timely permanency." E.D., 195 Wn. App. at 695. A parent's prison term may constitute a continuing incapacity affecting the parent's ability to meet parental obligations. J.W., 90 Wn. App. at 426; In re Welfare of Sego, 82 Wn.2d 736, 740, 513 P.2d 831 (1973).

On review, unchallenged findings of fact are considered verities. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001). Challenged findings will be upheld if they are supported by substantial evidence. J.F., 109 Wn. App. at 722. We defer to the trier of fact on issues of conflicting testimony, credibility of the witnesses, and the weight or persuasiveness of the evidence. J.F., 109 Wn. App. at 722; In re Termination of S.J., 162 Wn. App. 873, 881, 256 P.3d 470 (2011); State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Termination of FL's Parental Rights

Appellant contends the trial court erred in terminating his parental rights because it improperly relied on two forms of inadmissible hearsay: (a) a nontestifying social worker's adoption report and (b) a Mississippi Court of Appeals opinion upholding appellant's convictions for murder, kidnapping, and child abuse. We disagree.

Adoption Report

As required by RCW 26.33.200(1), the trial court ordered the preparation of an adoption report. Kathleen Kennelly, a social worker and guardian ad litem, prepared the report but did not testify at trial. Kennelly's report stated in part that adoption was in the child's best interests.

Appellant objected to the report's admission for purposes of the termination petition, arguing that it contained hearsay. Although the court sustained the objection, its oral ruling suggested it considered the report in terminating FL's parental rights. The court stated it considered the report "not . . . for the purposes of the termination per se; just the information in there with regard to [parental] fitness." In its *written* decision, however, the court made clear that it "did not consider the report of Kathleen Kennelly." And while the court incorporated its tentative oral ruling into its final written ruling, it did so "with the express exception of any references made to the Kennelly report and recommendation."

Thus, contrary to FL's assertions, the record establishes that the court did not consider the adoption report in terminating his parental rights.

### Mississippi Appellate Court Decision

Appellant also objected to the trial court's consideration of a Mississippi appellate decision affirming his convictions for murder, kidnapping, and child abuse. He argued that the opinion could not be considered for any purpose other than the fact of conviction. The trial court sustained the objection, ruling that the contents of the decision were hearsay and irrelevant. In its oral ruling, however, the court stated:

> in this case the Court does find by clear, cogent, and convincing evidence in the form of a criminal conviction which has been upheld on appeal that [FL] is unfit to parent the child. Without going into great detail, because it's simply not necessary, but the conviction of [FL] *with regard to his actions of a terrible neglect of his young son* [FLL's half-brother], born the same year, basically, as [FLL] in this

7

case, that compels this Court to also find that under that conviction, *the facts of it*, that he is an unfit parent.

(Emphasis added.) Because the court's written decision incorporated this portion of its oral ruling without qualification, appellant contends the court improperly considered hearsay recited in the Mississippi appellate decision and, therefore, reversal is required. We disagree.

Even assuming the court's oral ruling referenced excluded hearsay, reversal is required only if, within reasonable probabilities, the error affected the court's decision. State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). A review of the court's oral and written rulings demonstrates that the hearsay was inconsequential to the court's finding of parental unfitness and termination of appellant's parental rights.

The court's oral ruling focused primarily on five parental duties that courts may consider in determining parental fitness:

> "(1) [E]xpress love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3]) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance."

In re the Interests of H.J.P., 114 Wn.2d 522, 531, 789 P.2d 96 (1990) (alteration in original), quoting In re Adoption of Lybbert, 75 Wn.2d 671, 674, 453 P.2d 650 (1969). The court concluded appellant was not capable of fulfilling duties 3, 4, and 5, "given his incarceration in Mississippi . . . for a life sentence." It further concluded he had not fulfilled duties 1 and 2 since 2012 despite the ability to

8

contact FLL by phone or letter. In addition, the court relied on the fact of appellant's "criminal conviction which has been upheld on appeal."

Similarly, the court's written ruling focused on appellant's convictions, incarceration, and failure/inability to perform his parental duties during his incarceration:

> 2. There is clear, cogent and convincing evidence that it is in the child's best interests to terminate the relationship. Biological father has failed to, and is permanently unable to, perform parental duties. *The Court specifically finds that the respondent father is unfit based on his failure to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations.*
>
> 3. Respondent father *is serving a life sentence without possibility of parole for first-degree murder and felony child abuse of the subject child's half-brother. The circumstances blocking respondent father's performance of his parental obligations demonstrate a substantial lack of regard for his parental duties.*

(Emphasis added.)

Appellant's convictions for murder, kidnapping, and child abuse, his sentence of life without parole, and his failure to contact his child or perform parental duties since 2012 overwhelmingly support the court's findings and decision to terminate his parental rights. There is no reasonable probability that the result would have been different absent the court's alleged consideration of hearsay. Given that conclusion, appellant's claim that his counsel was ineffective for failing to renew his objection to the hearsay also fails. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (defendant claiming ineffective assistance of counsel must establish both deficient performance and a

9

reasonable probability that but for counsel's omission, the outcome would have been different).

The respondents have filed a cost bill. The court exercises its discretion not to impose appellate costs.

Affirmed.

Becker, J.

WE CONCUR: