[No. 10690-2-I. Division One. August 16, 1982.]

*In the Matter of* LEEANNE DARROW.

MONTGOMERY W. DARROW, *Appellant,* v. THE
DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, *Respondent.*

*Nancy Talner* of *Washington Appellate Defender Association,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Eric B. Watness, Assistant,* for respondent.

*Katharine Hershey,* as guardian ad litem.

CALLOW, J.—Montgomery Darrow appeals from a trial court order permanently terminating his parental rights in his daughter Leeanne. The issue presented is whether a parent incarcerated at an out–of–state prison is entitled to appear at a parental termination hearing to oppose the permanent termination.

While living with his girlfriend in Phoenix, Darrow

fathered a child born April 14, 1975. The father and mother quarreled 6 months later, causing the mother and child to move out and come to Seattle. There has been no contact between Darrow and his daughter since 1975. The mother voluntarily submitted to an order of dependency and termination of her parental rights in 1980. At that time it was learned that Darrow had been convicted of rape in 1978 and was serving a 10–year prison term in Arizona.

After the mother's parental rights were terminated, Washington State sought to terminate Darrow's rights in Leeanne. Darrow opposed the action and suggested placement of his daughter with his sister in Phoenix. This alternative was found inappropriate in a report submitted by the Arizona Department of Economic Security at the request of Washington State.

Through his appointed counsel, Darrow moved to arrange for his presence at the termination proceeding in Seattle. Arizona prison officials were apparently willing to return Darrow to Seattle for the purpose of the hearing. Washington expressed no objection to Darrow's presence but refused to assume the expenses associated with his transport, care, and custody. The trial court refused to issue the order and the termination hearing was conducted without Darrow's presence but with the representation of counsel.

Evidence of Darrow's unfitness included the fact of his imprisonment, his neglect of the child since late 1975, and the report of a Seattle psychologist who had not met Darrow but had reviewed a psychological report prepared by Arizona corrections officials for vocational counseling purposes. Based upon that report, the psychologist concluded that Darrow exhibited "paranoid schizophrenic traits" and was an unfit parent. The trial court entered an order permanently depriving Darrow of all parental rights.

Darrow contends that he was denied the right to be heard and to confront witnesses. He asserts that his attorney could only *assist* him in protecting his rights and that his presence was essential to his effective representation by

counsel. He asserts that the State of Washington should be compelled to arrange for his attendance and bear the financial expense. The State of Washington agrees that where a parent is *completely* prevented from presenting or rebutting evidence, due process is violated but asserts that Darrow did have meaningful access to the court through alternative methods such as letters, photographs, depositions, or a possible continuance after the State's case in chief to provide additional information.

 We turn to a discussion of the issues. Preservation of the family unit is a fundamental constitutional right protected by the Fourteenth Amendment. *Quilloin v. Walcott,* 434 U.S. 246, 54 L. Ed. 2d 511, 98 S. Ct. 549 (1978). Parental termination proceedings are accorded strict due process protections. *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972).

> [T]he nature of the process due in parental rights termination proceedings turns on a balancing of the "three distinct factors" specified in *Mathews* v. *Eldridge,* 424 U. S. 319, 335 (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure.

*Santosky v. Kramer,* 455 U.S. 745, 754, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982).

The due process protections afforded parents in a termination hearing include a strict burden of proof. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973) ("clear, cogent and convincing evidence"); the right to notice and an opportunity to be heard and defend, *In re Martin,* 3 Wn. App. 405, 476 P.2d 134 (1970); and the right to the assistance of counsel. *In re Martin, supra;* RCW 13.34.090; *but see Lassiter v. Department of Social Servs.,* 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981) (appointment of counsel for indigent parents not compelled by the Fourteenth Amendment).

The effect of imprisonment upon a parental termination proceeding was addressed in *In re Sego, supra* at 740:

[A] parent's misconduct, even if criminal in nature, does not automatically support permanent child deprivation. By the same token, imprisonment, alone, does not necessarily justify an order of permanent deprivation. *In re Staat,* 287 Minn. 501, 178 N.W.2d 709 (1970). On the other hand, a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as are the parent's conduct prior to imprisonment and during the period of incarceration.

*See also State v. LaCaze,* 95 Wn.2d 760, 630 P.2d 436 (1981). *In re Clark,* 26 Wn. App. 832, 837, 611 P.2d 1343 (1980) upheld the termination of parental rights of a prisoner held in Minnesota, noting, however, that "[t]here is no evidence in the record that [the appellant] made any attempts to be present at the hearing."

The identical issue presented here was confronted in *In re F.H.,* 283 N.W.2d 202 (N.D. 1979). In *F.H.* the natural mother placed her child for adoption and consented to the termination of her parental rights. The father, incarcerated in Oregon, objected to the termination of his parental rights and announced his intention to assume custody of the child when he was released from prison. Counsel was appointed, who appeared and defended on the father's behalf. On appeal from the termination of his parental rights, the father contended due process guaranteed his right to be present at the hearing. The court viewed the matter as one concerning a prisoner's right to defend in civil proceedings against him, noting the general view that due process guarantees *access* to the court but not the right to attend. The court balanced that principle with the prisoner's strong parental interest in the child, and concluded that due process generally is satisfied if the prisoner may appear through counsel and by deposition or other method of discovery.

The opinion states in part:

From our review of cases from the various jurisdictions

and the principles of law involved, we are compelled to conclude that a convict does not have a constitutional right to personally appear in a civil suit where he has been permitted to appear through counsel and by deposition, if appropriate. Any right to appear personally would have to rest upon convincing reasons and would ultimately be left to the sound discretion of the trial court.

In making its determination the trial court may take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition. The exercise of the trial court's discretion concerning a prisoner's right to appear personally in a civil action will not be overturned by this court in the absence of an abuse of that discretion which we have defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court.

In the present case, William was represented by able counsel. He was given the opportunity and did appear by deposition. There was no guarantee that even had a continuance been granted, William would have been paroled on the date indicated by the Oregon Parole Board, as such parole was conditional on William's behavior.

We also believe, in the interest of the child, that a proceeding for the adoption of a child, and especially an infant, is one which should not drag on. Although the adoption in this case is still not complete due to this appeal, the trial court was acting within its discretion in seeking a prompt disposition of the action.

(Citations omitted.) *In re F.H., supra* at 209–10.

 We agree. The right to appear *personally* and defend is not guaranteed by due process so long as the prisoner was afforded an opportunity to defend through counsel and by deposition or similar evidentiary techniques. *See also Stone v. Morris,* 546 F.2d 730 (7th Cir. 1976);

*Moeck v. Zajackowski,* 541 F.2d 177 (7th Cir. 1976); *Payne v. Superior Court,* 17 Cal. 3d 908, 553 P.2d 565, 132 Cal. Rptr. 405 (1976); *Quaglino v. Quaglino,* 88 Cal. App. 3d 542, 152 Cal. Rptr. 47 (1979). In those cases where the imprisoned parent's attendance cannot be procured safely and timely, the trial court should assure that the parent is afforded a full and fair opportunity to present evidence or rebut evidence presented against him. As acknowledged by the State, granting a continuance after presentation of its case in chief is one means of assuring the parent's right to defend.

█ In this case Darrow was afforded a full opportunity to defend in a fair hearing while represented by counsel. The trial court's conclusions were founded upon clear, cogent and convincing evidence that termination of the parent–child relationship was in the child's best interest. *See In re Baby Boy C.,* 31 Wn. App. 639, 644 P.2d 150 (1982). The order of permanent termination is affirmed.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied September 15, 1982.

Review denied by Supreme Court December 3, 1982.