[Nos. 38374-4-I; 40231-5-I. Division One. March 23, 1998.]

*In the Matter of the Dependency of* J.W.

THE STATE OF WASHINGTON, *Respondent*, v. CARLOS J. WILLIAMS, *Appellant*.

*Catherine L. Floit* and *James R. Dixon* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Janet Cattano, Assistant*, for respondent.

COLEMAN, J. — In two linked appeals, Carlos Williams challenges a dependency dispositional order and a subsequent order terminating his parental rights to his daughter. Williams was convicted of numerous rape and other serious offenses and sentenced to about 75 years in prison. His daughter does not know him, and she had been abandoned by her mother. We affirm the lower court's dispositional order that these aggravated circumstances allowed the filing of a termination petition without first offering services to Williams. We also hold that there was sufficient evidence to support the subsequent termination order. We therefore affirm.

Williams is the biological father of J.W., a girl born in April 1993. J.W. has never lived with Williams, and there is no evidence that they ever had a relationship. J.W.'s mother, a drug addict, neglected to care for her daughter's medical needs and developmental abnormalities. In October 1994, J.W.'s mother left her at a foster home and has not been heard from since. The police later removed J.W. from the home by administrative order and placed her in another foster home. In December 1994, the Department of Social and Health Services (DSHS) filed a dependency petition, alleging that J.W. had been abused or neglected and that she had no parent, guardian, or custodian who could adequately care for her. The court entered a default order of dependency as to the mother.

Williams later agreed to an order of dependency as to himself. He was incarcerated and faced charges including multiple counts of rape against victims ranging from age 14 to 74. He admitted that if he were convicted on any of the rape counts, he would be "likely to remain in prison until the child is an adult." The disposition hearing was set

to take place after Williams' pending criminal charges were resolved.

In September 1995, Williams moved for visitation with his daughter. DSHS objected to visitation because J.W. had appeared confused and bored when they took her to visit Williams in jail. The Child Protection Services' (CPS) caseworker reported that J.W. did not interact with Williams through the glass partition. The court denied Williams' motion without prejudice to bring a renewed motion if he were found guilty on the criminal charges.

In January 1996, Williams was convicted on five counts of first degree rape, one count of attempted rape, one count of first degree kidnapping, six counts of first degree burglary, and one count of first degree robbery. DSHS then moved for permission to file a petition to terminate Williams' parental rights without any obligation to offer dispositional services. DSHS reasoned that Williams was not available or fit to parent the child and that no services could reunite the family due to his convictions as a serial rapist and anticipated incarceration for life.

At the March 1996 dispositional hearing, Williams was not transported from jail despite his request to be present. Williams' attorney objected to proceeding without his client, but conceded that he and Williams had found "ample opportunity to discuss the issues[.]" The court ruled that Williams' presence was not necessary and that his opinion about the merits of his criminal appeals would not be helpful.

The State argued that Williams' crimes amounted to willful abandonment of the child. Williams had been in jail for most of J.W.'s life and had little contact with her. The State also claimed that his multiple rape convictions constituted aggravating circumstances that made remedial services futile. When the court asked what burden of proof applied to the services issue, the State responded, "I would like the highest possible finding for future purposes. I think the Court can do a preponderance. I think this case—the facts are such that the Court should do more than a preponder-

ance; either clear, cogent and convincing or beyond a reasonable doubt subject to any situation on appeal." In its written order, the court made the following findings beyond a reasonable doubt:

2.7 Williams has an extensive adult criminal history including felony convictions for residential burglary and possession of stolen property and misdemeanor convictions for theft, assault, criminal trespass and unlawful use of a weapon. He has been incarcerated for most of the child's short life. The King County Prosecutor's Office will be asking for the equivalent of several life sentences for Williams at his sentencing on the most recent convictions.

. . . .

2.10 The child does not know Williams or have any form of bond or attachment to him and visitation or contact between the child and Williams is not in the best interest of the child.

2.11 Williams is currently both unfit and unavailable to parent the child.

The court made the following findings under the lower standard of clear, cogent, and convincing evidence:

2.8 The pattern of criminal behavior engaged in by Williams manifests a wilful and substantial lack of regard for his parental obligations towards the child and constitutes abandonment of the child.

2.9 There are no services that can be offered or provided by DSHS to the alleged father in the foreseeable future that are capable of correcting his parental deficiencies or providing for the return of the child to his care within the foreseeable future. The pattern of criminal behavior engaged in by Williams and the likely length of his incarceration renders him unavailable to receive or benefit from remedial services and relieves DSHS of any obligation to offer or provide such services. His convictions and the nature of his crimes constitute aggravated circumstances as defined in RCW 13.34.130(2).

. . . .

2.12 At this time, absent a successful appeal of his sen-

tences, Williams will be unavailable to parent the child for an extended period of time as per existing sentencing guidelines.

Under RCW 13.34.130(2), the court thus ruled that DSHS could file a petition to terminate Williams' parental rights without first offering or providing remedial services. While that statute also allows the petition to be filed earlier than the normal six-month waiting period, the State did not exercise that option.

After DSHS filed its termination petition, Williams was sentenced to about 75 years in prison. He moved to stay the termination proceedings while he appealed his convictions and the above dispositional order. Finding no evidence that Williams' convictions were likely to be reversed, the court ruled that J.W.'s need for a stable home outweighed his interest in staying the termination proceedings. It thus denied Williams' motion for a stay.

In the termination proceedings, Williams conceded that his convictions and lengthy sentence would reflect negatively on his fitness as a parent if they were allowed to stand. He argued only that a reversal on the admission of DNA evidence or the ineffective assistance of counsel would make him available to parent the child. Williams conceded that it would take about two years for an appellate decision. The court denied Williams' renewed motion for a stay, finding that J.W.'s best interests required a speedy determination.

The State and Williams agreed that the issues were legal because no facts were in dispute. J.W. had been found dependent, the court had entered a dispositional order, and J.W. had been removed from her parents' custody for more than six months. The State relied on the previous dispositional order to explain why it had not offered services to Williams. It also argued that continuing the parent/child relationship would clearly diminish J.W.'s prospects for early integration into a stable and permanent home.

The court found by clear, cogent, and convincing evidence that Williams had been offered or provided all rea-

sonably available services. It also found by clear, cogent, and convincing evidence that there was little likelihood that J.W. could be returned to Williams in the near future. The court reasoned that even if Williams ultimately prevailed on his appeal, a final decision was two years away and thus not in the "near future" from the three-year-old child's perspective. But the court ordered a continuance to allow the parties to investigate whether J.W.'s foster home was an adoptive home and whether placement with Williams' sister in Wisconsin might provide a permanent home without the necessity of terminating Williams' parental rights.

When the matter continued, the State represented that J.W.'s current foster parents had expressed an interest in adopting her. The court, however, ruled that it had previously erred by requiring evidence of preadoptive placement. It thus found by clear, cogent, and convincing evidence that a continued relationship with Williams would diminish J.W.'s prospect for early integration into a permanent home. "Be it adoption by the aunt or adoption by the foster parent, the adoption can't occur unless and until the parental rights are terminated[.]" Finding that all the requisite elements under RCW 13.34.180 were proven by clear, cogent, and convincing evidence, the court terminated Williams' parental rights.

Williams first argues that the lower court erred at the dispositional hearing by allowing DSHS to file an expedited termination petition without offering any services. He reasons that his rape and other convictions do not constitute aggravated circumstances warranting the order because they do not fit within RCW 13.34.130(2)'s list of mandatory considerations. We hold that the statutory list is not exclusive and affirm the lower court's ruling that aggravated circumstances exist in this case.

The lower court ordered that DSHS could file a petition to terminate parental rights without first offering services to Williams under RCW 13.34.130(2) and (3)(c). While services aimed at reunifying the family are normally required

before termination, the main thrust of this statute is to avoid the necessity of remedial services when they would be futile. It allows this expedited process when the court finds, among other things, that "it is not reasonable to provide further services to reunify the family because the existence of aggravated circumstances make [sic] it unlikely that services will effectuate the return of the child to the child's parents in the near future." RCW 13.34.130(2). If the statute went no further, the above language would certainly allow a finding that Williams' 75-year incarceration for serial rape of minors and elderly women constituted aggravating circumstances that would prevent reunification regardless of parenting classes or other services. But the statute continues:

> In determining whether aggravated circumstances exist, the court shall consider one or more of the following:
>
> (a) Conviction of the parent of rape of the child . . .;
>
> (b) Conviction of the parent of criminal mistreatment of the child . . .;
>
> (c) Conviction of the parent of [various] assault crimes, when the child is the victim . . .;
>
> (d) Conviction of the parent of murder, manslaughter, or homicide by abuse of the child's other parent, sibling, or another child;
>
> (e) A finding by a court that a parent is a sexually violent predator . . .;
>
> (f) Failure of the parent to complete available treatment [that] resulted in a prior termination of parental rights to another child[.]

RCW 13.34.130(2). Williams claims that by enumerating these six factors that the court must consider, the Legislature intended to exclude other considerations from the determination of whether aggravated circumstances exist. We disagree.

In construing statutory language, words must be given their usual and commonly accepted meaning. *E.g.*, *In re*

*Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969). By directing that the court "shall consider" certain enumerated factors, the Legislature intended to assure that those circumstances were not ignored or overlooked. But nothing in the statute suggests that the court may not give consideration to other circumstances as well. The court has discretion to order a termination petition if it finds any aggravated circumstances that would prevent a family reunification through services.

We hold that RCW 13.34.130(2)'s list of mandatory considerations is nonexclusive. If the Legislature had intended to limit the court's function as Williams suggests, it could have easily expressed itself. For example, it could have provided that the court "shall only consider" the enumerated factors or that it "must find one or more" of them to exist.

■ Imprisonment alone does not necessarily justify the termination of parental rights. *E.g.*, *In re Welfare of Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973); *In re Pawling*, 101 Wn.2d 392, 398, 679 P.2d 916 (1984). But the parent's resulting inability to perform his or her parental obligations is certainly relevant to the child's welfare. *E.g.*, *Sego*, 82 Wn.2d at 740. Also relevant are the nature of the parent's crimes and the parent's conduct before being imprisoned. *Sego*, 82 Wn.2d at 740. The multiple felonies for which Williams was convicted are more serious and entail longer sentences than many of the crimes listed in RCW 13.34.130(2). One of his rape victims was 14 years old. Williams had established no relationship with his young daughter until after the dependency proceedings began, and he now faces 75 years in prison. J.W. does not know him and is forced to live in a foster home because her mother abandoned her. These circumstances are sufficient to show that services would do nothing to reunify the family in the near future. The purpose behind RCW 13.34.130(2)'s expedited procedure has thus been met.

■ We recognize that statutes providing for the termination of parental rights are to be strictly construed. *Lybbert*,

75 Wn.2d at 674. The dominant consideration, however, is the moral, intellectual, and material welfare of the child. *Lybbert*, 75 Wn.2d at 674. The parent's rights must yield to the child's where there is a conflict. RCW 13.34.020; *Lybbert*, 75 Wn.2d at 674; *Sego*, 82 Wn.2d at 738. The Legislature has provided that the child has a right to a safe, stable, and permanent home and to a speedy resolution of termination proceedings. RCW 13.34.020. With the child's best interests in mind, we hold that the lower court correctly found this case to present aggravated circumstances warranting its dispositional order.

We next address the burden of proof required to find that aggravated circumstances exist pursuant to the statute. Williams argues that the trial court erred because it did not find aggravated circumstances beyond a reasonable doubt. At a termination hearing, the State may avoid proving that all previously ordered and required services had been offered if it can establish other facts beyond a reasonable doubt. But at no time does the statute require proof beyond a reasonable doubt regarding the issue of services. Terminating parental rights normally requires proof by clear, cogent, and convincing evidence. *Krause v. Catholic Community Servs.*, 47 Wn. App. 734, 743, 737 P.2d 280 (1987). But we are not persuaded that this standard applies at the dispositional fact-finding under RCW 13.34.130(2).

■ In providing that the court can order DSHS to file a termination petition after a dispositional hearing, RCW 13.34.130(2) is silent regarding the standard of proof needed to show that aggravated circumstances make services unlikely to effectuate reunification. Before the disposition, the requisite finding of dependency must be supported by a preponderance of the evidence. JuCR 3.7(c). The subsequent disposition hearing is a more informal proceeding where the rules of evidence do not apply. ER 1101(c)(3). While the lower court found aggravated circumstances on clear, cogent, and convincing evidence, we hold that a preponderance of the evidence was all that was

required. A higher burden is not imposed until the termination hearing. *See* RCW 13.34.190.

Williams also argues that the lower court erred by finding that he had abandoned J.W. because the finding is not supported by the evidence and is not a valid basis to allow DSHS to file an expedited termination petition. The lower court's finding of abandonment, however, was not material to its dispositional order. The court's ruling that DSHS could file the expedited termination petition was based upon the finding that services would be futile given Williams' likely incarceration for the rest of his life. In light of the permissible finding of aggravated circumstances under RCW 13.34.130(2), we need not decide whether the finding regarding abandonment was erroneous because any error was harmless.

■ Williams next argues that the lower court erroneously denied his request for visitation rights. Normally, visitation can be denied only if the court determines that it is "necessary to protect the child's health, safety, or welfare." RCW 13.34.130(3)(b)(ii). But this statute, upon which Williams relies, expressly does not apply when the court has ordered the filing of a termination petition under RCW 13.34.130(2). Because J.W. did not have a bond with Williams and appeared bored and confused when she visited him in jail, the lower court was entitled to find that visitation was harmful to the child's welfare. Although it did not expressly make this finding, we can conclude only that this permissible conclusion was drawn. We therefore affirm the lower court's order denying visitation while the termination proceedings were pending.

■ In his final argument pertaining to the dispositional order, Williams claims that the court denied his right to due process of law by conducting the dispositional hearing in his absence. Williams had requested to attend the hearing, but some error prevented his transfer from jail. Because the issues were purely legal and the relevant facts were not in dispute, we hold that Williams was sufficiently afforded his right to be heard through his attorney on the facts of this case.

Williams had the right to a meaningful opportunity to be heard at his dispositional hearing. *See* RCW 13.34.090(1); *see also State ex rel. Taylor v. Dorsey,* 81 Wn. App. 414, 420, 914 P.2d 773 (1996). But there is no absolute right to personally attend judicial proceedings. *Dorsey,* 81 Wn. App. at 421. Rather, due process requires a balancing of three factors in each particular case: (1) the parent's interests, (2) the risk of error created by the procedures used, and (3) the State's interest. *See In re Welfare of Key,* 119 Wn.2d 600, 610-11, 836 P.2d 200 (1992), *cert. denied,* 507 U.S. 927 (1993).

We agree with the lower court that the State's interest in an early resolution of this matter for J.W.'s welfare outweighed Williams' desire to personally attend the disposition hearing. A parent's right to attend such a proceeding must rest upon convincing reasons and will usually be left to the sound discretion of the trial court. *See In re Darrow,* 32 Wn. App. 803, 808, 649 P.2d 858 (1982) (quoting *In re F.H.,* 283 N.W.2d 202, 209-10 (N.D. 1979)). In this case, no facts were disputed and Williams' counsel represented his client's position on the relevant legal issues after fully discussing them beforehand. Given these circumstances, there was little room for error due to Williams' personal absence. We hold that Williams was afforded his right to be heard in a meaningful manner. We therefore affirm the dispositional order.

Turning to Williams' appeal from the termination order, he first argues that the court erred by not considering factors such as culturally relevant or relative placement. Williams wanted J.W. to be placed with his sister in Wisconsin. RCW 13.34.260 provides that DSHS should normally follow the natural parent's wishes and consider family members and ethnicity when placing the child in foster care. But this does not mean that the court must be influenced by these considerations in determining whether to terminate parental rights. The court should consider placing the child with a relative in a dispositional order. RCW 13.34.130(1)(b). But once both parents' rights are terminated, the court is merely directed to place the child

in the custody of DSHS or a licensed child-placing agency or foster home for the purpose of placing the child for adoption. RCW 13.34.210.

In this case, the court ruled that Williams' sister could petition to adopt J.W. through normal procedures. A CPS worker testified that Williams' rights should be terminated and that they would then determine the best placement for J.W., considering both Williams' sister and J.W.'s current foster home as potential candidates. If continuing the parent and child relationship would be harmful to the child, the court may order termination regardless of the child's prospects for adoption. *In re Esgate*, 99 Wn.2d 210, 214, 660 P.2d 758 (1983). We hold that the lower court permissibly decided the issue of termination without considering where J.W. would be placed.

 Williams next argues that the court's findings at the termination hearing were not supported by clear, cogent, and convincing evidence. Preservation of the family unit is a fundamental constitutional right. *Darrow*, 32 Wn. App. at 806. The extreme step of terminating parental rights is reserved for those cases in which a family reunification is highly unlikely. The State must normally prove the following elements by clear, cogent, and convincing evidence:

(1) That the child has been found to be a dependent child under RCW 13.34.030(4); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(4); and

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be

remedied so that the child can be returned to the parent in the near future.

. . .; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]

RCW 13.34.180(1)-(6). The court may waive factors (3) and (4) if the State proves the other findings beyond a reasonable doubt. RCW 13.34.190(2). Normally, when the court orders the expedited process under RCW 13.34.130(2), the State will have to satisfy this higher burden at termination. But in this case, the State did not take advantage of the expedited procedure. Instead, it waited more then six months after J.W. had been removed from parental custody pursuant to a dependency order. It thus elected to prove RCW 13.34.180's six factors by clear, cogent, and convincing evidence at the termination hearing. Such evidence exists when the fact in issue is shown to be "highly probable." *In re Dependency of K.R.*, 128 Wn.2d 129, 141, 904 P.2d 1132 (1995). Williams concedes that the first three factors were satisfied under this standard. We hold that the other elements were also supported by sufficient evidence.

Under RCW 13.34.180(4), the State must first prove that any services ordered at disposition have been offered. Here, the dispositional order relieved the State of this obligation. Nonetheless, the State still had to satisfy the court at termination that all necessary and reasonably available services capable of correcting parental deficiencies within the foreseeable future had been offered or alternatively that no such services were reasonably available. *See e.g. In re Welfare of Ferguson*, 32 Wn. App. 865, 869-70, 650 P.2d 1118 (1982), *rev'd on other grounds*, 98 Wn.2d 589 (1983). The parental deficiency in this case is Williams' 75-year incarceration for multiple rapes and other crimes. The court was certainly entitled to find by clear, cogent, and convincing evidence that no services could correct this deficiency in the foreseeable future.

The record also contains clear, cogent, and convincing ev-

idence that there was "little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." RCW 13.34.180(5). While incarceration alone does not necessarily justify termination of parental rights, the length of Williams' sentence justifies the finding that reunification is not likely in the near future. Moreover, this was not the only factor the court weighed in determining whether termination was appropriate.

Turning to RCW 13.34.180's sixth factor, the State must prove that "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]" J.W. lived in a foster home and could not be placed for permanent adoption until Williams' rights were terminated. Thus, we hold that the required finding was highly probable and affirm.

In sum, we uphold the lower court's findings under RCW 13.34.180 by clear, cogent, and convincing evidence. We additionally note that the nature of Williams' crimes, the length of his sentence, and the fact that he had made no previous effort to have contact with his daughter, also established the required factors beyond a reasonable doubt under RCW 13.34.190(2). The record allows no other conclusion in this case. We agree that termination was in J.W.'s best interests under RCW 13.34.190(4). We therefore affirm the order terminating Williams' parental rights.

Finally, Williams argues that the lower court erred by denying his motion to stay the termination proceeding while his criminal appeals were pending. But nothing in the record shows that Williams was likely to succeed in his appeal of those convictions. The lower court acted within its discretion by ruling that J.W.'s interest in a speedy resolution of the termination proceedings outweighed Williams' interest.

We affirm the disposition and termination orders.

GROSSE and AGID, JJ., concur.
Review denied at 136 Wn.2d 1021 (1998).