
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | |
| A.R.W.-M., | ) | No. 39465-4-III |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

STAAB, J. — R.P. appeals the termination of her parental rights, contesting the court's finding that termination was in the best interest of the child. We affirm.

BACKGROUND

A.R.W.-M. is the daughter of R.P. (mother) and R.M. (father). On January 19, 2019, A.R.W.-M. was placed into protective custody by law enforcement officers. A.R.W.-M. was approximately 18 months old at the time. After being taken into protective custody, the Department of Children, Youth, and Families (Department) filed a dependency petition on January 25, 2019, alleging A.R.W.-M. was abused and/or neglected. A.R.W.-M.'s home was described as being in disarray, with no running water and limited heat.

Dependency of A.R.W.-M. was established on August 28, 2019, when the parents stipulated to the entry of an agreed dependency order and A.R.W.-M. was placed in out-of-home care with her maternal aunt. In the dependency order, the mother acknowledged

a need for a mental health assessment and the Department's concerns regarding her substance abuse. The order required her to engage in drug and alcohol evaluation and treatment, including urinalysis (UA) testing, as well as a mental health assessment and treatment. The court also ordered her to maintain contact with the social worker and to maintain safe and stable housing.

On January 4, 2021, the State petitioned the court for entry of an order terminating the parent-child relationship between A.R.W.-M. and her parents. A bench trial was held on this petition from October 31, 2022 to November 4, 2022. The father relinquished his parental rights on the opening day of trial.

At trial, various social workers and health care professionals testified, along with the mother herself. The trial court entered detailed findings and conclusions.

The trial court found that the mother had failed to correct her parental deficiencies. The mother is unfit to parent given her unresolved mental health and substance abuse issues that affect her daily living and ability to safely parent. The mother was offered and provided services that were capable of correcting parental deficiencies, such as drug and alcohol assessments and recommendations, random UA's, and parenting education and recommendations. Yet, the mother testified that she was still using marijuana and methamphetamine on a daily basis, has no income, and has not held a job in many years.

A licensed therapist testified that she was unable to engage the mother in necessary services. Another licensed therapist testified that the family preservation

services she provided to the mother ended after a few months due to missed appointments, parental conflict, and substance use and mental health issues interfering with services. Further, a licensed health counselor, testified that she diagnosed the mother with post-traumatic stress disorder, major depressive disorder, and recurrent and severe psychotic symptoms, but the mother's recommended treatments were terminated due to lack of contact and no-shows. Finally, a counselor at Comprehensive Healthcare testified that the mother never truly engaged in substance abuse treatment and these services were terminated for lack of engagement.

The trial court also found that the consistency of the mother's visitation waned as time passed. While the mother consistently participated in visitation with A.R.W.-M. in the early stages of the case, she frequently missed visits in the later stages of the dependency. In January 2019, visitation was 7 times a week for 2 hours supervised and by January 2020, it was reduced to 7.5 hours a week supervised because the mother missed visits. Social workers and the guardian ad litem (GAL) testified that the missed visits significantly impacted A.R.W.-M.'s emotional state and behavior. By the end of 2020, visits were reduced to 2 times a week for 2.5 hours supervised. The mother attended only 5 visits in 2022.

The social workers and GAL testified that given the inconsistent visitation and that A.R.W.-M. had been placed out of the home with her maternal aunt for nearly four

years—more than 70 percent of her life—they were of the opinion that the mother no longer played a meaningful role in her daughter's life.

The trial court further found that there is little likelihood that conditions will be remedied so that A.R.W.-M. can return to her mother in the near future. The mother's engagement in court ordered services were minimal, she continues to struggle with mental health issues and substance abuse issues, and there is no indication this will change in the near future. The mother continues to reside at the residence her daughter was removed from and that the mother testified has been condemned and she has been trespassed from. At the time of trial, there was no heat or running water at the residence. Further, the mother had 45 months since shelter care and 38 months since the order of dependency to realize that she has parental deficiencies that must be resolved. However, she has never internalized that her mental health, substance use disorder, unstable living situation, psychosis, inability to secure employment, and complete unwillingness to engage in services are standing in the way of reunification with her daughter.

The trial court found that adoption rather than guardianship was in A.R.W.-M.'s best interest. Social workers discussed the option of guardianship with A.R.W.-M.'s maternal aunt and the mother, but both parties opposed the idea. A.R.W.-M.'s maternal aunt opposed guardianship instead of adoption, while the mother rejected the idea of her daughter being placed with anyone but her. However, the court found that the mother was not making any progress eliminating her parental deficiencies and is not stable

enough in her lifestyle to visit her daughter on a regular basis. Nor was the mother capable of allowing another individual to act as A.R.W.-M.'s guardian without interfering with that individual in a negative or harmful way.

The court found that the mother's continuing contact with A.R.W.-M. resulted in emotional upheaval and increased behavioral outbursts. Social workers and the GAL testified that A.R.W.-M. is usually a happy child and good with other kids, but after visits with her mother, she would act out by becoming physically aggressive with other children by biting, kicking, and hitting. More recently, she has become physically aggressive with adults after the rare visit with her mother. A.R.W.-M.'s long-term daycare expressed concern about her behavior and considered asking her not to return. For these reasons, the trial court found that A.R.W.-M. would benefit from the stability, consistency, and uninterrupted parenting that is only available through adoption.

Finally, the trial court found that continuation of the parent-child relationship diminishes A.R.W.-M.'s prospects for integration into a stable and permanent home. A.R.W.-M. needs a permanent setting which the mother is unable to provide. A.R.W.-M. will be more easily integrated into a new family setting now at the age of five than if the process is delayed, but no permanent setting can be established until parental rights have been terminated. Further, the mother has demonstrated she is incapable of providing or unwilling to provide a healthy and stable environment for her daughter due to the fact that she has not corrected her parental deficiencies.

Based on these findings, the court concluded that termination of parental rights is in A.R.W.-M.'s best interests. The court granted the petition terminating the mother's parental rights.

The mother appeals.

ANALYSIS

The only issue on appeal is the trial court's finding that termination was in A.R.W.-M.'s best interest.

As a reviewing court, our role is "limited to assessing whether substantial evidence supports the trial court's findings." *In re Parental Rights to D.H.*, 195 Wn.2d 710, 718, 464 P.3d 215 (2020). "Substantial evidence" requires us to determine if the evidence is "sufficient to persuade a rational, fair-minded person of the truth of the finding." *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Unchallenged findings constitute verities on appeal. *Id.*

While our role on appeal is limited, we nonetheless recognize the substantial rights at stake in this case. "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Because parents have a fundamental liberty interest in the custody and care of their children, the Department may terminate parental rights "only 'for the most powerful [of] reasons.'"

*In re Termination of S.J.*, 162 Wn. App. 873, 880, 256 P.3d 470 (2011) (alteration in

original) (quoting *In re Welfare of A.J.R.*, 78 Wn. App. 222, 229, 896 P.2d 1298 (1995)).

The termination of parental rights is a two-part process at trial. First, the trial

court considers whether the parents are fit. RCW 13.34.190(1)(a). To meet its burden of

proving that the parents are unfit, the Department must prove the six elements in RCW

13.34.180(1) by "clear, cogent, and convincing evidence." RCW 13.34.190(1)(a)(i). The

second part of the analysis focuses on the child. If the Department can meet its burden of

showing that the parents are unfit, it must then prove, by a preponderance of the evidence

that termination is in the best interest of the child. RCW 13.34.190(1)(b); *In re Welfare*

*of A.B.*, 168 Wn.2d 908, 911-12, 232 P.3d 1104 (2010).

The "criteria for establishing the best interests of the child are not capable of

specification." *In re Welfare of Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).

Rather, this determination depends on the facts and circumstances of each case. *Id*.; *see*

*also In re Dependency of A.M.F*., 23 Wn. App. 2d 135, 147, 514 P.3d 755 (2022)

**(**"Courts therefore consider a broad range of nonexclusive factors.").

Factors that courts have considered in the past are "the strength and nature of the

parent and child bond, the benefit of continued contact with the parent or the extended

family, the need for continued State involvement and services, and the likelihood that the

child may be adopted if parental rights are terminated." *In re Parental Rights to J.B.*, 197

Wn. App. 430, 439, 387 P.3d 1152 (2016). Further, a court is fully justified in finding that

termination is in a child's best interest when the parents have been unable to rehabilitate over a lengthy dependency period. *See In re Dependency of M.-A.F.-S.*, 4 Wn. App. 2d 425, 465, 421 P.3d 482 (2018) ("'Where a parent has been unable to rehabilitate over a lengthy dependency period, a court is fully justified in finding termination in the child's best interests rather than leaving [the child] in the limbo of foster care for an indefinite period.'" (internal quotation marks omitted) (quoting *In re Dependency of T.R.*, 108 Wn. App. 149, 167, 29 P.3d 1275 (2001))). Moreover, children have "a right to a stable, safe, and permanent home and to a speedy resolution of termination proceedings" *and these rights* prevail over the parent's interest. *In re Dependency of J.W.*, 90 Wn. App. 417, 427, 953 P.2d 104 (1998); *J.B.*, 197 Wn. App. at 440.

In this case, the mother does not challenge the trial court's finding that the Department met its burden of proving the statutory factors by clear, cogent, and convincing evidence. Instead, her appeal focuses solely on the second prong, challenging the court's finding that termination was in the best interest of A.R.W.-M. We find that there is ample evidence and unchallenged findings of fact supporting the trial court's determination that terminating parental rights is in A.R.W.-M.'s best interest.

A.R.W.-M. does not have a strong relationship with her mother. At the time of the hearing, A.R.W.-M. was five years old and had been out of the care of her mother for nearly four of those years. Throughout this time, the mother had been inconsistent in her visitation with A.R.W.-M. and visited her only five times in 2022.

Additionally, A.R.W.-M.'s behavior and emotional well-being are negatively impacted by contact with her mother. Not only is A.R.W.-M. affected by her mother's frequently missed visits, but she is also affected by the rare occasion when her mother does visit. It is an unchallenged finding that the mother's continuing contact with A.R.W.-M. results in emotional upheaval and behavioral outbursts. A.R.W.-M. becomes physically aggressive with other children and adults after visits with her mother—to the extent that her long-term daycare has considered asking her not to return.

Further, the mother has been unable to rehabilitate during a lengthy dependency period. The mother had 45 months since shelter care and 38 months since dependency to realize her parental deficiencies. She had been provided with numerous services that could have helped her in this process, such as drug and alcohol treatments, random UA's, mental health treatments, and parenting education. Although these services are capable of correcting parental deficiencies, the mother never fully engaged in them and failed to complete any of the recommended treatments. The mother continues to struggle with substance abuse and mental health issues.

Given the mother's inability to rehabilitate during a lengthy dependency period, there is little likelihood that conditions will be remedied so that A.R.W.-M. can return to her mother in the near future. And this fact is unchallenged by the mother.

Moreover, A.R.W.-M. stands to be adopted upon termination of parental rights. A.R.W.-M. has been in the care of her maternal aunt since she was approximately 18

9

months old and this is a pre-adopt home. The trial court even found that adoption rather than guardianship is in A.R.W.-M.'s best interest.

A.R.W.-M. has a right to a safe, stable, and permanent home, which the mother is unable to provide. There is no indication this will change in the foreseeable future. Meanwhile, through adoption, A.R.W.-M.'s maternal aunt can provide A.R.W.-M. with the stability and permanency she not only needs, but also is entitled to. As the trial court found, she will have a much easier time integrating into a new family now at the age of five than she will if the process is delayed. Here, A.R.W.-M.'s rights prevail over the mother's interest.

We conclude that substantial evidence supports the trial court's findings that terminating the mother's parental rights was in A.R.W.-M.'s best interest.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____ _____
Lawrence-Berrey, A.C.J.     Pennell, J.

10