# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Welfare and Guardianship of:<br><br>A.N.B.; A.C.B.; A.J.B.; and A.J.B.,<br><br>           Minor Children,<br><br>CARLOS BENITEZ,<br><br>           Appellant,<br><br>           v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF SOCIAL AND HEALTH SERVICES,<br><br>           Respondent. | No. 71230-6-I<br>(Consolidated with Nos.<br>71231-4-I, 71232-2-I, 71233-1-I,<br>71234-9-I, 71236-5-I, 71237-3-I)<br><br>DIVISION ONE<br><br><br>UNPUBLISHED<br><br>FILED: February 23, 2015 |

Cox, J. — In this consolidated appeal, Carlos Benitez contests termination of his parental rights and dismissal of his petition for guardianship. He argues that collateral estoppel does not bar the petition for guardianship. He further claims that the Department of Social and Health Services failed to prove all statutory elements for termination. Finally, he claims the trial court abused its discretion by not fully granting his motion to appear unshackled in court.

We hold that the doctrine of collateral estoppel bars relitigation of the question whether the paternal grandmother of these children is a suitable guardian. DSHS proved and the trial court properly found that one of the challenged statutory elements for termination was established. But the trial court

did not make a required finding for the other challenged element. Finally, any error in not fully granting his motion to appear unshackled in court was harmless. We affirm in part, reverse in part, and remand for further proceedings.

Benitez is the biological father of four children—A.N.B. (D.O.B. 2/8/99), A.C.B. (D.O.B. 12/15/99), A.J.B. (D.O.B. 5/16/02), and A.J.B. (D.O.B. 9/15/06). In December 2011, the Department of Social and Health Services (DSHS) petitioned for dependency of the children for the second time. At the time, Benitez was incarcerated. The trial court ordered the children placed in foster care, and it directed DSHS to investigate whether the children's relatives could offer appropriate placement.

On March 20, 2012, the court heard oral argument on Benitez's motion to place A.J.B. with her paternal grandmother. DSHS opposed this proposed placement due to allegations of physical and sexual abuse in the grandmother's home when the children were younger. At the hearing, the children provided the court with specifics regarding her alleged conduct. Their biological mother also opposed this placement. The court denied Benitez's motion.

On April 18, 2012, the court held the dependency disposition hearing. Benitez acknowledged that he would be incarcerated until 2031. Nonetheless, he contested dependency on the basis that the children had a "guardian" or "custodian" to care for them—their paternal grandmother. But, as this court later stated in the appeal of the dependency disposition order entered on that date, Benitez "failed to refute the concerns that were raised about the paternal

grandmother at the March 20 hearing."[1] The April 18, 2012 disposition order of dependency for all the children was based on RCW 13.34.030(6)(c).[2] Under that statute, the children were dependent because they had "no parent, **guardian**, or custodian capable of adequately caring for [them] . . . ."[3] They remained placed in foster care.

Benitez appealed the April 18, 2012 dependency disposition order to this court, challenging the trial court's determination that his four children were dependent and challenging the trial court's placement decision.[4] This court rejected his arguments and affirmed. Thereafter, the supreme court denied Benitez's petition for discretionary review.

In March 2013, DSHS petitioned to terminate Benitez's parental rights. Benitez petitioned for guardianship, naming the children's paternal grandmother as the proposed guardian. He also moved to continue the termination hearing and requested that DSHS conduct a home study to consider placement of the children with the paternal grandmother. In response, DSHS moved to dismiss the guardianship petition. The trial court dismissed the guardianship petition on the basis of collateral estoppel and entered an order terminating Benitez's parental rights.

---

[1] In re Welfare of A.N.B., noted at 174 Wn. App. 1047, 2013 WL 1739120, at *3.

[2] Clerk's Papers at 25.

[3] (Emphasis added.)

[4] Welfare of A.N.B., noted at 174 Wn. App. 1047.

Benitez appeals.

## TERMINATION OF PARENT CHILD RELATIONSHIP

Benitez makes two arguments that the trial court erred in finding that DSHS met its burden under RCW 13.34.180(1). The first is without merit. But we agree with the second.

The court may enter an order terminating all parental rights to a child only if the court finds all of the following elements are established by clear, cogent, and convincing evidence:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . . ; and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency

apprised of his or her location and in accessing visitation or other meaningful contact with the child.[5]

"Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be 'highly probable.'"[6] If this first step is met, the trial court must also find that termination of the parent-child relationship is in the best interests of the child.[7] "The dominant consideration . . . is the moral, intellectual, and material welfare of the child."[8]

"'Where the trial court has weighed the evidence, review is limited to ascertaining whether the findings of fact are supported by substantial evidence, and if so, whether the findings support the conclusions of law and the judgment.'"[9] "'Substantial evidence is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'"[10]

Here, Benitez does not challenge four of the six termination elements. Rather, he contends that DSHS failed to prove that two of the elements had been established—specifically RCW 13.34.180(1)(d) and (f).

---

[5] RCW 13.34.180(1); RCW 13.34.190(1)(a)(i).

[6] In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (internal quotation marks omitted) (quoting In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)).

[7] RCW 13.34.190(1)(b).

[8] In re Dependency of J.W., 90 Wn. App. 417, 427, 953 P.2d 104 (1998).

[9] In re Dependency of A.M.M., 182 Wn. App. 776, 785, 332 P.3d 500 (2014) (quoting In re Dependency of P.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990)).

[10] Id. (internal quotation marks omitted) (quoting In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009)).

*RCW 13.34.180(1)(d)*

First, Benitez asserts that the State "did not expressly and understandably provide all reasonably available services capable of correcting Mr. Benitez's parental deficiencies."[11] We disagree.

DSHS must prove that it has offered or provided "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future."[12] "The services offered must be tailored to each individual's needs."[13] "[T]he court may consider any service received, from whatever source, bearing on the potential correction of parental deficiencies."[14]

"Even where the State inexcusably fails to offer a service to a willing parent, termination is nonetheless appropriate if the service would not have remedied the parent's deficiencies in the foreseeable future."[15]

Here, the trial court found that all necessary services reasonably available have been offered and that there is no hope that the child will be returned to Benitez regardless of services provided:

> 2.10 Since dependency was established, services ordered under RCW 13.34.130 have been offered or provided and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been

---

[11] Motion for Accelerated Review Opening Brief of Appellant at 29.

[12] RCW 13.34.180(1)(d).

[13] In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).

[14] In re Dependency of D.A., 124 Wn. App. 644, 651-52, 102 P.3d 847 (2004).

[15] Id. at 655.

offered or provided. In this case, Mr. Benitez is in Department of Corrections (DOC) custody until the year 2031. The only services available to Mr. Benitez there, other than AA or NA, will be provided two years prior to his release. Nothing in the law requires [DSHS] to send outside professionals to an inmate who will be in custody for another twenty years.

2.11 Even if [DSHS] did send outside professionals to Mr. Benitez in prison to provide services, there is little likelihood that the conditions will be remedied so that the child could be returned to [Benitez] in the near future. There is no hope this child will be returned, regardless of services to [Benitez]. [Benitez] is unavailable due to his own making and the numerous felonies he committed.[16]

These findings are supported by substantial evidence, and they support the conclusion that this termination factor was satisfied. At trial, a counselor at the correctional center testified that DSHS recommended services for Benitez, but because of his incarceration until 2031, Benitez is not eligible to participate in those services until 2029.[17] Benitez does not dispute that he is incarcerated until 2031.

Benitez argues that "if [he] is not offered services due to his incarceration, and his parental rights are terminated because he has not completed services which he was never offered, then incarceration is effectively the basis for terminating his parental rights."[18] But, while imprisonment alone does not justify termination, "[T]he parent's resulting inability to perform his or her parental

---

[16] Clerk's Papers at 309.

[17] Report of Proceedings (Nov. 7, 2013) at 43-44.

[18] Motion for Accelerated Review Opening Brief of Appellant at 30.

obligations is certainly relevant to the child's welfare."[19] Further, termination is appropriate if the service would not have remedied the parent's deficiencies in the foreseeable future. Benitez is incarcerated until 2031, and his deficiencies cannot be remedied in the foreseeable future.

Benitez also argues that DSHS "did not request or provide for outside professionals to come to the facility."[20] But, as the trial court stated, "Nothing in the law requires [DSHS] to send outside professionals to an inmate who will be in custody for another twenty years."[21] Benitez fails to point to any authority to the contrary. Thus, this argument is not persuasive.

The trial court properly determined by clear, cogent, and convincing evidence that this element was satisfied.

### RCW 13.34.180(1)(f)

Second, Benitez asserts that DSHS failed to prove all of the necessary elements to show that continuation of his relationship with his children clearly diminished their prospects for early integration into a stable and permanent home. Specifically, he argues that the trial court failed to consider recent amendments to this statute regarding incarcerated parents.[22] Because this record fails to show such consideration by the court, we agree.

---

[19] Dependency of J.W., 90 Wn. App. at 426.

[20] Motion for Accelerated Review Opening Brief of Appellant at 31.

[21] Clerk's Papers at 309.

[22] Supplemental Brief of Appellant at 1-4.

The below emphasized portions of this statute show the amendments that are at issue:

> That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. *If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.*[23]

For example, as one of several requirements, "[T]he court shall consider whether [the] parent maintains a meaningful role in [the] child's life based on factors identified in RCW 13.34.145(5)(b)."[24] That statute sets forth the following six factors the court may consider in making this assessment:

> (i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;
>
> (ii) The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;
>
> (iii) A positive response by the parent to the reasonable efforts of the department or the supervising agency;
>
> (iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;

---

[23] RCW 13.34.180(1)(f) (emphasis added).

[24] Id.

(v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and

(vi) Whether the continued involvement of the parent in the child's life is in the child's best interest.[25]

In In re Dependency of A.M.M., this court reversed a termination order because there was no evidence in the record that the trial court considered the 2013 amendments to RCW 13.34.180(1)(f).[26] It stated, "This omission indicates both that the Department failed to satisfy its burden of proof as to the termination factor contained within RCW 13.34.180(1)(f) and that the trial court failed to apply the law in effect at the time of its ruling."[27]

Here, there are some differences between this case and A.M.M. For example, here, DSHS made the trial court aware of these 2013 amendments to the statute when it referenced the amended language in its memorandum of authorities submitted prior to trial.[28] Additionally, DSHS presented evidence at trial that is relevant to Benitez's relationship with his children. For example, DSHS presented testimony that letters Benitez wrote to his children were inappropriate and not shared, that the children did not request phone contact with

---

[25] RCW 13.34.145(5)(b).

[26] 182 Wn. App. 776, 778-89, 332 P.3d 500 (2014).

[27] Id. at 787.

[28] Clerk's Papers at 271-72.

Benitez, and that Benitez had not visited with his children.[29] Further, in closing argument, DSHS argued, "Clearly the parent-child relationship diminishes these children's prospects for integration into a safe and stable home. ***The relationship is not good between [Benitez] and his children.***"[30]

Nevertheless, this record fails to show that the trial court considered all factors that the amended language of the statute requires. Specifically, there is nothing to indicate that the trial court considered each of the three requirements under the amended statute—whether Benitez maintained a meaningful role in his children's life, whether DSHS made "reasonable efforts," and whether particular barriers existed.

Further, despite the argument of DSHS to the contrary, we do not infer from the findings that the trial court entered that it clearly considered the factors required by the amended language. An appellate court may infer omitted findings "'if—but only if—all the facts and circumstances in the record . . . clearly demonstrate that the omitted finding was actually intended, and thus made, by the trial court.'"[31]

Here, the record does not clearly demonstrate that the omitted findings were actually intended and made by the trial court. Like in A.M.M., the trial court applied the language contained within former subsection (1)(f), and made no

---

[29] See, e.g., Report of Proceedings (Nov. 7, 2013) at 59-60, 67-71, 78-80.

[30] Id. at 110 (emphasis added).

[31] Dependency of A.M.M., 182 Wn. App. at 788 (quoting In re Welfare of A.B., 168 Wn.2d 908, 921, 232 P.3d 1104 (2010)).

mention of the amended language or to the factors in RCW 13.34.145(5)(b) either in its written findings or its oral ruling. In A.M.M., this court stated, "Given this, we cannot conclude that all of the facts and circumstances in the record clearly demonstrate that the omitted findings were actually intended."[32] The same is true here.

DSHS argues that the trial court considered all the evidence and "then made clear findings that [Benitez] did not maintain a meaningful relationship with the children . . . ."[33] In support of this, it cites the trial court's oral remarks that Benitez is not a fit parent and had not provided food, clothing, or medical care since 2007.[34] But this is not a "clear finding" that Benitez did not maintain a meaningful relationship with the children. Rather, it is a clear finding that Benitez is not a fit parent. And DSHS expressly asked the court to make a finding that Benitez is not a fit parent based on that evidence.[35] DSHS fails to explain how a finding of parental unfitness is sufficient to show that the trial court considered each of the amended statutory requirements. Moreover, the court appears to have made this oral remark when considering whether termination was in the best interests of the children, not when it was considering the six termination factors. For these reasons, this argument is not persuasive.

---

[32] Id. at 789.

[33] Respondent's Supplemental Brief at 5.

[34] Id. at 5-6 (citing Report of Proceedings (Nov. 7, 2013) at 116).

[35] Report of Proceedings (Nov. 7, 2013) at 110-11.

DSHS also argues that the trial court found DSHS offered all necessary services that were reasonably available.[36] This is true, as the trial court made this finding to show that another termination factor—(1)(d)—was met. But DSHS fails to explain how this finding shows that the court considered whether DSHS made "reasonable efforts" as that term is contemplated within the amended language of (1)(f). Further, even if this finding is sufficient to show "reasonable efforts" under (1)(f), there is still no showing that the trial court considered the other two requirements of the amended language—whether Benitez had a meaningful relationship with his children and whether particular barriers existed.

DSHS next points to the following language from A.M.M.: "[T]here is no evidence in the record suggesting that [DSHS] presented evidence in an effort to satisfy its burden *or* that the trial court did, in fact, make the findings referenced in the amended subsection . . . ."[37] DSHS emphasizes the "*or*" from that quote and argues that, in this case, "the record is replete with evidence that [DSHS] met its burden."[38] With this, DSHS appears to argue that either it is not necessary for the trial court to make the findings if DSHS met its burden, or that this court may make the required finding. But a proper reading of A.M.M. does

---

[36] Respondent's Supplemental Brief at 8.

[37] Dependency of A.M.M. 182 Wn. App. 787 (emphasis added).

[38] Respondent's Supplemental Brief at 9.

not support this view. More importantly, an appellate court does not make findings of fact.[39]

Finally, DSHS argues that "[a]ny objective reading of the findings can only support the conclusion that the court determined Mr. Benitez had no relationship with his children and had no hope of establishing one for the next 18 years."[40] But an objective reading of the findings does not support the conclusion that the trial court determined that Benitez had "no relationship" with his children. And regardless, the findings still do not address the other two requirements of the amended language. DSHS asks this court to infer too much.

We express no opinion whether DSHS proved the required factors on the record that is now before us. That is for the trial court to decide, in the first instance. But we cannot conclude that the trial court considered whether the amended language had been satisfied by clear, cogent, and convincing evidence. Accordingly, we must reverse this ruling and remand for further proceedings to address this element.

## COLLATERAL ESTOPPEL

Benitez next argues that the trial court erred in dismissing his guardianship petition based on the doctrine of collateral estoppel.[41] We hold that the trial court properly applied the doctrine to this case.

---

[39] Marcum v. Dep't of Soc. & Health Servs., 172 Wn. App. 546, 560, 290 P.3d 1045 (2012).

[40] Respondent's Supplemental Brief at 10.

[41] Motion for Accelerated Review Opening Brief of Appellant at 16-24.

In order for collateral estoppel to apply, the party asserting the doctrine must prove the following: "'(1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.'"[42]

"Collateral estoppel requires a prior determination of an issue on its merits."[43] Thus, "[t]he doctrine will preclude relitigating only those issues which have actually been tried and determined. If there is ambiguity or indefiniteness in a verdict or judgment, collateral estoppel will not be applied as to that issue."[44]

Here, Benitez only disputes the first two elements of collateral estoppel—whether the issue decided in the prior adjudication is identical, and whether the prior adjudication ended in a final judgment on the merits.

First, the court properly determined that the issue presented in the current guardianship petition—the suitability of the paternal grandmother for placement of the children—is the same issue that was previously before the trial court in the dependency proceeding.

---

[42] Thompson v. Dep't of Licensing, 138 Wn.2d 783, 790, 982 P.2d 601 (1999) (quoting Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 262-63, 956 P.2d 312 (1998)).

[43] Mead v. Park Place Props., 37 Wn. App. 403, 407, 681 P.2d 256 (1984).

[44] Id.

The suitability of the children's paternal grandmother was the subject of both the March 20, 2012 hearing and the April 18, 2012 hearing. In the first hearing, Benitez sought to have his mother serve as the guardian. The children's mother and DSHS both opposed this. The court heard testimony from the children and declined to appoint the paternal grandmother as guardian due to issues of her suitability.

At the April 18, 2012 disposition hearing, Benitez again sought to have the paternal grandmother appointed as guardian. The trial court declined this request. As this court stated in the prior appeal of the disposition order, "Benitez failed to refute the concerns that were raised about the paternal grandmother at the March 20 hearing."[45] And the supreme court denied review, quoting this court's language characterizing the April 18, 2012 disposition hearing.[46]

In sum, there is no doubt that the question of the suitability of these children's paternal grandmother was addressed in the prior proceeding. The issue is identical to that presented in this proceeding.

In short, because the issue decided in the prior adjudication is the same as the one presented here, the first element of collateral estoppel is satisfied.

Second, the trial court properly determined that there was a final judgment on the merits of the placement decision by the trial court in the dependency that was the subject of the prior appeal.

---

[45] Welfare of A.N.B., 2013 WL 1739120, at *3.

[46] Clerk's Papers at 257-61.

A disposition decision following a finding of dependency is a final and appealable order under RAP 2.2(a)(5).[47] The finality of that order is subject to timely requests for review. But upon exhaustion of review, the order is a final judgment.[48]

Here, it is undisputed that the disposition decision following the finding of dependency was the subject of review, both in this court and the supreme court. This court rendered its decision in the prior appeal, and the supreme court denied review. Thus, the disposition decision of the trial court was a final judgment for purposes of collateral estoppel.

The remaining issue is whether the disposition decision was a final judgment on the merits on the suitability of the paternal grandmother for placement.

In his prior appeal to this court on the disposition decision, Benitez challenged the trial court's placement decision, arguing that it was based on evidence shown to be false.[49] This court rejected his challenge and stated:

> We conclude the trial court did not abuse its discretion in denying Benitez's request to place the children with their paternal grandmother and determining that continued placement in foster care was in their best interests. On March 20, 2012, several weeks before the dependency and disposition hearing, the court heard argument about moving A.J.B. to the paternal grandmother's home. At that hearing, three children provided statements to the court

---

[47] In re Dependency of Brown, 149 Wn.2d 836, 839-40, 72 P.3d 757 (2003).

[48] See Gronquist v. State, 177 Wn. App. 389, 397, 313 P.3d 416 (2013), review denied, 180 Wn.2d 1004 (2014).

[49] Welfare of A.N.B., 2013 WL 1739120 at *3.

17

indicating that they wished not to be placed with the paternal grandmother and that she had physically or sexually abused the children in the past. DSHS and the children's mother also opposed placement with her. ***At the dependency and disposition hearing, Benitez failed to refute the concerns that were raised about the paternal grandmother at the March 20 hearing. The evidence provided good cause not to follow Benitez's wishes regarding placement, particularly where the other natural parent opposed such placement.***[50]

The supreme court denied review of this court's decision.[51] In its ruling denying review, it stated, "Contrary to Mr. Benitez's seeming argument, no evidence shows that the children's allegations were false."[52]

The trial court considering the motion to dismiss the guardianship petition at the time of the termination hearing properly relied, in part, on this court's prior decision when it dismissed the guardianship petition. It stated:

> The Court of Appeals . . . went on to decide that the trial court Commissioner Paxton did not abuse its discretion in denying Mr. Benitez's request to place the children with their paternal grandmother and determining that continued placement in foster care was in their best interest.
>
> So in light of a clear mandate in the statute that the child shall be placed with a relative unless there is a risk to the child in doing so the Court of Appeals affirmed Commissioner Paxton's ruling that the children should not be placed with the paternal grandmother. ***I think that decision, the Court of Appeals' decision, very clearly shuts the door on any future guardianship proceedings.*** That decision by Commissioner Paxton in the face of a statutory mandate that the children should be placed with [a] relative unless there is something that was of concern about the children's safety or welfare in that placement. ***And the Court of Appeals affirming Commissioner Paxton's***

---

[50] Id. (emphasis added).

[51] Clerk's Papers at 257-61.

[52] Id. at 260.

***decision not to place the children with their paternal grandmother constitutes a decision which collaterally estops Mr. Benitez from further pursuing placement with his mother either as a foster placement relative, foster placement, or as a guardianship placement.*** So the motion to dismiss the petition for guardianship is granted.[53]

Generally, issues of placement are subject to regular review and modification at review hearings.[54] But, as the trial court stated, as to placement with the paternal grandmother, this court's prior decision "very clearly shut[] the door on any future guardianship proceedings."[55] Notably, this court pointed out that Benitez failed to refute concerns about the paternal grandmother at the dependency hearing. Thus, the disposition decision was a final judgment on the merits as to denying placement with the paternal grandmother.

The law of the case doctrine also supports this conclusion. This doctrine provides that "once there is an appellate holding enunciating a principle of law, that holding will be followed in subsequent stages of the same litigation."[56] Thus, we decline to revisit the holding in the prior appellate decision—that there was no abuse of discretion because placement with the paternal grandmother was inappropriate.

---

[53] Report of Proceedings (Nov. 7, 2013) at 32 (emphasis added).

[54] See RCW 13.34.138.

[55] Report of Proceedings (Nov. 7, 2013) at 32

[56] Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005).

Benitez argues that collateral estoppel does not apply because dependency review orders are not final judgments.[57] In doing so, he relies heavily on In re Dependency of Chubb.[58] It is true that dependency review orders are not final orders. But, the relevant order here is the dependency disposition order, not any of the review orders that followed. Thus, reliance on Chubb is misplaced.

Benitez argues that this court "did not render a final judgment on the merits as to [the paternal grandmother's] suitability, but merely found that the commissioner did not abuse his discretion in denying [Benitez's] dependency placement request."[59] For the reasons already explained, this argument conflicts both with this court's prior view of the record at the disposition hearing and our view of the arguments in this case.

Benitez next argues that collateral estoppel does not apply because the issue of suitability of the paternal grandmother was not actually litigated.[60] He argues that the commissioner "did not intend for his placement decisions to bar any future placement of the children with their grandmother" and he cites excerpts from the transcript of the hearings to support this contention.[61] For example, he cites the following statements by the commissioner: "I'm not in a

---

[57] Motion for Accelerated Review Opening Brief of Appellant at 16.

[58] 112 Wn.2d 719, 773 P.2d 851 (1989).

[59] Motion for Accelerated Review Opening Brief of Appellant at 19.

[60] Id.

[61] Id. at 18.

position today to make any decision with regard to placing the children [with the paternal grandmother]," "I'm not going to ruling [sic] today . . . if we learn something down the road okay, but not today."[62]

Notwithstanding these assertions, Benitez fails to address this court's prior observations that there was nothing at the April 18, 2012 hearing that refuted the allegations made at the March 20, 2012 hearing regarding placement with the paternal grandmother. We do not depart from those observations here.

Finally, Benitez argues that the trial court's error in dismissing the guardianship petition requires reversal of the termination order, because the availability of a guardianship placement is material to whether the State can meet its burden to prove RCW 13.34.180(1)(f). Because we conclude that there was no error, we reject this argument.

## DENIAL OF MOTION TO REMAIN UNSHACKLED

Benitez argues that the trial court abused its discretion when it denied his motion to remain unshackled during the termination proceeding.[63] Any error in this ruling was harmless.

It is well settled that "a prisoner is entitled to be brought into the presence of the court free from restraints."[64] "'Restraints are viewed with disfavor because they may abridge important constitutional rights, including the presumption of innocence, privilege of testifying in one's own behalf, and right to consult with

---

[62] Clerk's Papers at 202-03, 231.

[63] Motion for Accelerated Review Opening Brief of Appellant at 24-28.

[64] State v. Damon, 144 Wn.2d 686, 690, 25 P.3d 418 (2001).

counsel during trial.'"[65] "[R]estraints should 'be used only when necessary to prevent injury to those in the courtroom, to prevent disorderly conduct at trial, or to prevent an escape.'"[66]

"A trial judge must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury."[67] In State v. Hartzog, the supreme court listed several factors the trial court may consider in determining whether to use physical restraints:

> "[T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and the mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies."[68]

A court's discretion to restrain a defendant "must be founded upon a factual basis set forth in the record."[69] Thus, "the trial court should allow the use

---

[65] State v. Turner, 143 Wn.2d 715, 725, 23 P.3d 499 (2001) (quoting State v. Hartzog, 96 Wn.2d 383, 398, 635 P.2d 694 (1981)).

[66] State v. Finch, 137 Wn.2d 792, 846, 975 P.2d 967 (1999) (quoting Hartzog, 96 Wn.2d at 398).

[67] Hartzog, 96 Wn.2d at 400.

[68] 96 Wn.2d 383, 400, 635 P.2d 694 (1981) (alteration in original) (quoting State v. Tolley, 290 N.C. 349, 368, 226 S.E.2d 353 (1976)).

[69] Id.

of restraints only after conducting a hearing and entering findings into the record that are sufficient to justify the use of the restraints."[70]

This court reviews a trial court's decision to shackle a defendant under an abuse of discretion standard.[71]

"A claim of unconstitutional shackling is subject to harmless error analysis."[72] "[T]he Defendant must show the shackling had a substantial or injurious effect or influence on the jury's verdict."[73]

Here, at the hearing on Benitez's motion to remain unshackled, defense counsel requested "to have [Benitez] at least unshackled on his hands in order to communicate with the attorneys" and to have his hands free while testifying.[74] DSHS opposed the motion, stating that Benitez was in custody for extremely violent crimes, and asked "that all he be allowed is one shackle."[75] The following exchange then occurred:

> [DEFENSE COUNSEL]: Certainly we're not opposed to the leg shackles remaining on. There are obviously deputies in the courtroom. I would ask that both of his hands be unshackled.
>
> THE COURT: Alright. Are you right handed or left handed?
>
> [BENITEZ]: Right handed.

---

[70] Damon, 144 Wn.2d at 691-92.

[71] Turner, 143 Wn.2d at 724.

[72] State v. Hutchinson, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998).

[73] Id.

[74] Report of Proceedings (Nov. 7, 2013) at 4.

[75] Id. at 5.

[THE COURT]: Alright. So the motion to change into civilian clothes is denied. There is no jury present. I don't see any need for that. The decision here is going to be made by the court. And believe me I've seen a lot of people in red pajamas. So the right hand can be uncuffed so that you can communicate with your attorney and write if you need to. But the left hand will remain shackled to the waist chain. Alright.[76]

Benitez does not contest that he was incarcerated for extremely violent crimes, as DSHS stated. It is clear from the above exchange that Benitez did not oppose the leg shackles. It is also clear that the court ordered that Benitez's dominant right hand remain free so that he could communicate with counsel.

So the only real dispute is the effect of the court not explaining its reasoning for the use of a restraint on Benitez's left hand, as case law dictates.[77] Assuming, without deciding, this was error, it was harmless. Benitez's dominant right hand remained free so he could communicate with counsel. Benitez never appeared in front of a jury, and a proceeding without a jury "greatly reduces the likelihood of prejudice."[78] Further, the trial court indicated that it would not be prejudiced. There is no reason to doubt this. In sum, Benitez fails to show that the use of a restraint on his left arm substantially affected the trial court's fact finding.

---

[76] Id.

[77] See Damon, 144 Wn.2d at 691-92; Hartzog, 96 Wn.2d at 400.

[78] State v. E.J.Y., 113 Wn. App. 940, 952, 55 P.3d 673 (2002).

DSHS argues that Benitez "did not have a right to appear free from shackles" because this "was a civil trial executed without a jury."[79]  Because of our resolution of the issue, we need not address this argument.

We affirm in part, reverse in part, and remand for further proceedings to address the recently amended statute.

_Cox, J._

WE CONCUR:

---

[79] Respondent's Brief at 26.

25